# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<u>NOT FOR PUBLICATION</u>

|  |  |  |
|---|---|---|
| MARKEYE BOYD, | : | |
| | : | **Civil Action No. 15-2210 (SRC)** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION & ORDER** |
| | : | |
| PLAINFIELD POLICE DEPARTMENT et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**<u>CHESLER</u>**, <u>District Judge</u>

      This matter comes before the Court upon the filing by Defendants Plainfield Police Division, City Of Plainfield, Captain Brian Newman, Lieutenant Kevin O'Brien, Sergeant Christopher Sylvester, Sergeant Troy Alston, Officer Green, and John Does 1-4 (collectively, "Defendants" or "2014 Defendants") of a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 regarding a 2014 incident that occurred with Plaintiff. Docket No. 73. Separate counsel represents the same Defendants regarding a 2012 incident that occurred with Plaintiff. Counsel for the 2012 Defendants has submitted a "brief in support" of the pending summary judgment motion (Docket No. 76), in which the 2012 Defendants seek their own summary judgment for state law claims that were not dismissed by this Court's Order dated July 6, 2017 (Docket No. 64). Plaintiff, previously represented by counsel but currently proceeding *pro se*, has submitted various typed and handwritten opposition papers (Docket Nos. 81-84, 90-92), to which the 2012 and 2014 Defendants have submitted reply briefs. Docket Nos. 88, 89.

The Court has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion for summary judgment for the 2014 Defendants is denied without prejudice, and the motion for summary judgment by the 2012 Defendants is granted.

## I.    FACTUAL BACKGROUND[1]

This case concerns two separate encounters between Plaintiff and Defendant Plainfield police officers. On June 6, 2012 (the "2012 Incident"), Plaintiff allegedly was subject to a motor vehicle stop and arrest, and subsequently an "anal cavity" search and "assault" at the hands of the individual Defendant officers. See First Amended Complaint ("FAC," Docket No. 20) ¶¶ 1-10. In November 2012, Plaintiff pled guilty to drug possession charges in connection with the drugs Defendants found during the search of Plaintiff's person. FAC ¶ 13. Because this Court finds, for reasons that follow, that the only cause of action remaining in the FAC regarding the 2012 Incident is time-barred by the applicable statute of limitations, it is not necessary to

---

[1] In a motion for summary judgment, it is not the Court's responsibility to find evidence of record to support the parties' arguments. See Collick v. Weeks Marine, Inc., 2013 WL 6070035, at *2 (D.N.J. Nov. 18, 2013); N.J. Auto. Ins. Plan v. Sciarra, 103 F. Supp. 2d 388, 408 (D.N.J. 1998) ("[I]t is the responsibility of each party to support its own contentions with a proper basis in the record of the case."). Instead, N.J. L. Civ. R. 56.1(a) requires the moving party to "furnish a statement which sets forth material facts as to which there does not exist a genuine issue," to which the non-movant responds with a "responsive statement of material facts."

In his responsive "Statement of Facts," Plaintiff does not "address[] each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion," as required by Local Rule 56.1(a). As a result, this Court has discretion to assume that Plaintiff accepts the facts in Defendants' 56.1(a) statement that Plaintiff does not specifically dispute. See Glazewski v. Corzine, 2009 WL 5220168, at *1 (D.N.J. Dec. 31, 2009), aff'd, 385 F. App'x 83 (3d Cir. 2010). Nevertheless, this Court has endeavored, in deference to Plaintiff's *pro se* status, to to examine the record as well as Plaintiff's various handwritten opposition papers to determine which facts are genuinely not in dispute.

determine whether there are genuine issues of material fact regarding this 2012 Incident that would preclude summary judgment.

The FAC alleges that a second encounter occurred with Defendants on April 1, 2014 (the "2014 Incident"), in which Defendants allegedly subjected Plaintiff to false arrest and false imprisonment, as well as excessive force during a stationhouse anal cavity search. See FAC ¶¶ 16-17. With respect to the 2014 Incident, Defendants have not submitted sworn affidavits or declarations to establish undisputed material facts, but instead rely on two unsworn contemporaneous police reports written by Defendant Officer O'Brien (Docket No. 90, Ex. C, "Supplementary Investigation Report" and "Officer Report," dated and signed April 1, 2014) and Defendant Detective Mulligan (Docket No. 90, Ex. D, "Supplementary Investigation Report," undated). For reasons that follow, this Court cannot determine—based on these deficient, unsworn reports—which material facts are genuinely disputed, and accordingly will deny the 2014 Defendants' motion for summary judgment.

Defendants assert, based on the contemporaneous police reports, that Defendant O'Brien received a tip from the Union County Crime Stoppers and a briefing from a confidential informant during January and February 2014, which described how non-party Jermaine Pennants dealt drugs from an apartment at a certain residential address, 143 Crescent Avenue. Docket No. 90, Ex. C. In their motion, Defendants provide no facts to establish the basis of knowledge, veracity, or reliability of these anonymous tips. The police report states that on April 1, 2014, Defendant O'Brien observed Mr. Pennants drive and park a Chevrolet Blazer in front of this residential address, with Plaintiff seated in the passenger seat, and that Defendant "immediately recognized [both men] from prior narcotic investigations and arrests." Docket No. 90, Ex. C. Defendants provide no facts to establish the basis for how or why Defendant O'Brien

immediately recognized these men. At this point, the police report states that Defendant O'Brien observed a third, unknown man exit the vehicle while holding a cell phone, enter the residence and return to the vehicle a few minutes later, and remain in the vehicle for approximately 30 seconds before exiting the vehicle and returning again to 143 Crescent Avenue. Docket No. 90, Ex. C.

Defendant O'Brien's police report then states that he observed Mr. Pennants drive a short distance and pull over next to Rashon Faulcon, whom Defendant "recognized from numerous prior narcotics investigations" and who entered and remained in the vehicle for less than a minute before exiting the vehicle. Defendants provide no facts regarding how Defendant O'Brien recognized Mr. Faulcon, nor facts to support the assertion that the vehicle pulled over in a "high crime and high narcotic distribution area." Plaintiff vigorously disputes encountering Mr. Faulcon, whom he contends "was never in the car with us" and they were "nowhere around this guy." Hearing Tr. 30:1-12. After Mr. Faulcon apparently left the vehicle, the police report asserts that Detective Mulligan followed the vehicle and conducted a stop, and subsequently placed Plaintiff under arrest and brought him to the Plainfield police station. Docket No. 90, Ex. C; Hearing Tr. 18:20-21 ("So then, we were zipping down to the Plainfield police station.").

It is difficult for this Court to ascertain the absence of genuine issues of fact regarding the 2014 stationhouse anal cavity search due to the deficient submissions and inconsistencies from both parties. In their statement of undisputed material facts, Defendants' only reference to the execution of this search is that "During the booking process of Plaintiff, Detective Mulligan located a plastic bag of suspected marijuana from Plaintiff's person" and "Plaintiff never complained of any alleged injuries at the time of arrest and booking." Docket No. 73-2, 7. Defendants provide no facts regarding the manner, duration, precise location, or process in which

the search was conducted. Further complicating this Court's task are the significant

inconsistencies between the allegations in the FAC and Plaintiff's handwritten opposition papers

and his testimony at the October 3, 2017 hearing before Judge Waldor.[2] Based on both parties'

submissions, this Court is unable to determine which material facts are genuinely disputed

regarding this search. Further, based on the parties' various submissions, this Court is likewise

unable to determine what criminal charges or convictions—if any—resulted from the marijuana

discovered during this search.[3]

---

[2] See, e.g., the presence of other officers during the search (cf. the "other officers came" and "all stood – they're not touching me – all stood" (Hearing Tr. 19:14-15) with the "other officers begin to grab me forcing me to ben[d] over, holding my hands on wall, while other officers forced my head down so I could be[nd] over" (Docket No. 82, 4)); the location of the hidden drugs (cf. "a bag of marijuana was in my briefs, not in my butt" (Hearing Tr. 19:18-19) with "What I'm trying to say is, you know through the briefs, you can put it to your butt and hold it. And that's what guys do, Your Honor. With their butt cheeks, they hold it together like that." (Hearing Tr. 94:21-24)); and the physical or medical harm produced by the cavity search (cf. "Kevin O'Brien went in [Plaintiff's] anal cavity, causing severe physical, psychological, and emotional harm" (FAC ¶ 16) with "[the] 2014 excess[ive] force would be [that] I was made to pull down my pants" (Hearing Tr. 60:11-12)).

[3] The disposition of any such criminal charges is pertinent because federal law imposes significant requirements on plaintiffs seeking to recover damages for allegedly unconstitutional conduct, including that a civil § 1983 suit may not be brought where "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless that "conviction or sentence has already been invalidated." Heck v. Humphrey, 512 U.S. 477, 487 (1994). District courts have the responsibility "to make a determination with regard to each claim whether it—if successful—would imply the invalidity of the conviction or sentence." Jackman v. Smith, 190 F. App'x 108, 110 (3d Cir. 2006).

Courts in the Third Circuit have held that some § 1983 claims for false arrest necessarily impugn the validity of the conviction, while others do not. Cf. Shelley v. Wilson, 152 F. App'x 126, 129 (3d Cir. 2005) ("A claim for false arrest does not necessarily implicate the validity of a conviction or sentence.") with Fields v. City of Pittsburgh, 2017 WL 4857457, at *2 (3d Cir. Oct. 26, 2017) (Plaintiff's "success on his false arrest claim depends on a finding that the officers lacked probable cause to arrest him, which would directly 'impugn [ ] the validity' of his resulting guilty plea."). Claims for excessive force under § 1983 may not necessarily be barred under Heck. See, e.g., Garrison v. Porch, 376 F. App'x 274, 278 (3d Cir. 2010) (guilty plea for assaulting arresting police officer did not Heck-bar § 1983 claim for excessive force, since Plaintiff's "unruly and threatening manner . . . certainly did not dispense with the [use of force] reasonableness requirement altogether.").

## II. PROCEDURAL HISTORY

Plaintiff's first Complaint (Docket No. 1) asserted claims under 42 U.S.C. § 1983 regarding the 2012 incident. After this Court dismissed those claims against the City of Plainfield and the Plainfield Police Department, Plaintiff filed the FAC, in which Plaintiff added claims regarding the 2014 Incident. The FAC asserts eleven claims (Counts I-XI) pursuant to 42 U.S.C. § 1983 regarding both events, two claims (Counts XII and XIII) for violations of the New Jersey Civil Rights Act ("NJCRA"), and three claims (Counts XIV-XVI) for New Jersey common law violations.

Subsequent to this Court's July 6, 2017 Order (Docket No. 64), which ruled on two motions to dismiss pursuant to Rule 12(b)(6), two sets of claims survive in the FAC. There are four claims—Counts II, IV, VI, and VIII—pursuant to 42 U.S.C. § 1983 regarding the 2014 Incident, which are against all Defendants except for the Plainfield Police Department. These claims are for false arrest, false imprisonment, excessive force, and the failure to intervene to prevent excessive force. There are also two claims—Counts XII and XIII—pursuant to the NJCRA, concerning the 2012 and 2014 Incidents respectively. The 2014 Defendants' motion (Docket No. 73) seeks summary judgment for all claims regarding the 2014 Incident, while the 2012 Defendants' motion (Docket No. 76) seek summary judgment for Count XII under the NJCRA.

---

With respect to the 2014 Incident, this Court is unable to determine whether Plaintiff's § 1983 claims are barred under Heck since neither the FAC nor the parties' moving papers refer to the resolution—be it conviction, guilty plea, or dismissal of charges—regarding the marijuana discovered pursuant to the cavity search. In the hearing before Judge Waldor, Defendants appear to indicate that Plaintiff was charged with possession, but that these charges were ultimately dismissed. Hearing Tr. 44:8-13. If this is not the case, this Court would invite Defendants to provide evidence of any criminal conviction or guilty plea, such that this Court may evaluate the applicability of Heck on Plaintiff's § 1983 claims.

### III.    LEGAL STANDARD

#### a.    Summary Judgment Under Rule 56

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party must support its motion by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c).

As the moving party, Defendants bear the burden of showing the absence of any genuine issues of material fact. Celotex, 477 U.S. at 323. An issue is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In the summary judgment context, "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the opposing party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Defendants may satisfy their burden by either (1) submitting affirmative evidence that negates an essential element of Plaintiff's claim; or (2) demonstrating to the Court that the Plaintiff's evidence is insufficient to establish an essential element of Plaintiff's case. Celotex, 477 U.S. at 331.

In support of their motion, Defendants' factual submissions regarding the 2014 Incident derive from two unsworn contemporaneous police reports. While police reports may be used to support a motion for summary judgment (see Clark v. Clabaugh, 20 F.3d 1290, 1294-1295 (3d Cir. 1994)), statements inadmissible at trial may not be considered for purposes of summary judgment. Smith v. City of Allentown, 589 F.3d 684, 693 (3d Cir. 2009). "While a police report

may be a public record, the contents of the police report . . . are inadmissible hearsay where . . . Defendants are offering the police report to establish the truth of the matters set forth in the report." Graham v. Jersey City Police Dep't, 2014 WL 7177362, at *3 (D.N.J. Dec. 16, 2014). In their motion, Defendants cite various conclusions contained within the reports, without disclosing the factual basis underlying those conclusions, such as the facts surrounding Defendant O'Brien's "immediate[] recogni[tion]" of Plaintiff "from prior narcotic investigations and arrests." Here, as in Graham, Defendants have "failed to carry their burden of showing the absence of a factual dispute" because they "have not provided an affidavit based on personal knowledge, or pointed to any other admissible evidence to support" their claims, but instead solely rely on the "contents of the police report". Id. at *3. This absence of affidavits or declarations by the Defendant officers significantly impedes this Court's task in determining which material facts are genuinely in dispute.

Once the moving party satisfies its burden under Rule 56, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007). This Court is mindful of Plaintiff's *pro se* status and accordingly liberally construes the documents and briefs Plaintiff has provided. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Lockhart v. Hoenstine, 411 F.2d 455, 458–59 (3d Cir. 1969) (When "plaintiff pleads pro se in a suit for the protection of civil rights, the court should endeavor to construe the plaintiff's pleading without regard for technicalities."); see also Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003) ("[The Court will] apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name."). Nevertheless, non-movant pro se plaintiffs may not merely "rest on speculation and conjecture in opposing a motion for summary judgment." Fiorentini v. William Penn Sch. Dist., 665 F. App'x 229, 233 (3d Cir.

2016). Rather, Plaintiff must support the existence of a genuine issue of material fact through record evidence, although he may rely on affidavits. <u>Stringer v. The Pittsburgh Police</u>, 408 F. App'x 578, 580 (3d Cir. 2011); <u>see also</u> <u>Giles v. Kearney</u>, 571 F.3d 318, 326 (3d Cir. 2009).

## IV.  DISCUSSION

### a.  Count XII, for Violations of the NJCRA Regarding the 2012 Incident, is Time-Barred by the Statute of Limitations

With respect to the 2012 Defendants, this Court's Order on July 6, 2017 dismissed Counts I, III, V, VII, IX, XI, XIV, XV, and XVI of the FAC, which leaves Count XII, for violations of the NJCRA pursuant to N.J. Stat. Ann. 10:6-2. Accordingly, this Court will not address legal arguments advanced in the 2012 Defendants' moving papers that address causes of action that were previously dismissed. <u>See</u> Docket No. 76, 5-9. In their opening brief, the 2012 Defendants contend that Plaintiff first filed nearly three years after the June 6, 2012 incident, despite the two-year statute of limitations governing causes of action under the NJCRA. Docket No. 76, 3. Since equitable tolling is not appropriate, the 2012 Defendants argue that Count XII should be dismissed.

This Court agrees with the 2012 Defendants that Count XII should be dismissed as time-barred, since claims under the NJCRA are subject to the two-year statute of limitations for personal injuries outlined in N.J. Stat. Ann. 2A:14-2. <u>Lapolla v. Cty. of Union</u>, 449 N.J. Super. 288, 298 (N.J. App. Div. 2017) ("The statute of limitations for claims under the NJCRA is two years. See N.J.S.A. 2A:14–2(a)."); <u>Brown v. City of Newark</u>, 2010 WL 1704748, at *4 (D.N.J. Apr. 26, 2010) ("Although the NJCRA contains no express statute of limitations, the language of New Jersey's generally-applicable personal injury statute of limitations, combined with the NJCRA's similar purpose and design to § 1983, which has employed state statutes of limitations since the Supreme Court's ruling in <u>Wilson v. Garcia</u>, convinces this Court that New Jersey's

two-year limitation applies to the NJCRA.")(internal citations omitted). Plaintiff filed his original complaint on March 23, 2015, or more than two years after the June 6, 2012 incident.

New Jersey law permits Plaintiffs to assert claims after the expiration of the relevant statute of limitations under limited circumstances, if and when statutory or equitable tolling applies. See Cason v. Arie St. Police Dep't, 2010 WL 2674399, at *5 (D.N.J. June 29, 2010). New Jersey law authorizes statutory tolling under certain circumstances, such as the nonresidency of persons liable (see N.J. Stat. Ann. § 2A:14–22) or for plaintiffs with minority or mental disability status (see N.J. Stat. Ann. § 2A:14–21). In "rare situation[s]," equitable tolling may be appropriate if the plaintiff has been "induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," has been "prevented from asserting his rights" in "some extraordinary way," or if the plaintiff "has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." Freeman v. State, 347 N.J. Super. 11, 31 (N.J. App. Div. 2002) (citations omitted).  In the First Amended Complaint, Plaintiff has not alleged—and this Court cannot otherwise identify—facts or extraordinary circumstances that would warrant statutory or equitable tolling under New Jersey law. Accordingly, Count XII in the FAC, for violations of the NJCRA regarding the 2012 Incident, is time-barred by the two-year statute of limitations and this Court dismisses Count XII with prejudice. As a result, all claims in the FAC against the 2012 Defendants have been dismissed.

**b. Claims Against the 2014 Defendants**

      i. <u>Summary Judgment is Not Appropriate for the § 1983 Claims for False Arrest (Count IV) and False Imprisonment (Count VI)</u>

A plaintiff has a Fourth Amendment claim for false arrest under 42 U.S.C. § 1983 if the arrest was made without probable cause. Ianuale v. Keyport Twp., 2016 WL 5955527, at *7 (D.N.J. Oct. 13, 2016); Pollock v. City of Philadelphia, 403 F. App'x. 664, 669 (3d Cir. 2010). If

the arresting officer lacked probable cause to effectuate the arrest, then the plaintiff has an additional claim for false imprisonment under § 1983 based on the detention pursuant to that arrest. O'Connor v. City of Philadelphia, 233 F. App'x 161, 164 (3d Cir. 2007). Because Defendants allegedly lacked "any information or knowledge that would establish probable cause to believe that [Plaintiff] had engaged in any conduct that could even be construed as unlawful," Plaintiff argues that he was subject to false arrest and false imprisonment. FAC ¶¶ 5-6 (12). In response, the 2014 Defendants argue that probable cause existed as a matter of law, based on "Defendants' prior knowledge of the actors involved, the circumstances leading up to the arrest, and Plaintiff's own admissions." Docket No. 73, 13. As evidence for probable cause existing on April 1, Defendants additionally cite Plaintiff's first appearance on April 9, at which time Judge Joan Robinson Gross determined that probable cause existed for the issuance of a criminal complaint. Because these circumstances establish the existence of probable cause as a matter of law, Defendants argue that summary judgment should be granted for the claims of false arrest and false imprisonment.

Probable cause exists when "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Heien v. North Carolina, 135 S. Ct. 530, 545 (2014) (internal citations omitted). Probable cause is determined by the "totality of the circumstances" (United States v. Myers, 308 F.3d 251, 276 (3d Cir. 2002) (quoting United States v. Arvizu, 534 U.S. 266 (2002)) and is an "objective [test], based on the facts available to the officers at the moment of arrest." Quinn v. Cintron, 629 F. App'x 397, 399 (3d Cir. 2015) (internal citations omitted). The arresting officer's subjective state of mind "does not invalidate the action taken as long as the circumstances, viewed objectively,

justify that action." Quinn, 629 F. App'x at 399 (quoting Devenpeck v. Alford, 543 U.S. 146, 153 (2004)). Probable cause supports the constitutionality of all arrests, even for minor criminal offenses. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

In the Third Circuit, probable cause is an absolute defense that bars § 1983 claims for false arrest and false imprisonment. Herman v. City of Millville, 66 F. App'x 363, 365 (3d Cir. 2003); Wildoner v. Borough of Ramsey, 162 N.J. 375, 389 (N.J. 2000). Although generally the "question of probable cause in a section 1983 damage suit is one for the jury," a district court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788–89 (3d Cir. 2000) (internal citations omitted); Campione v. Adamar of New Jersey, 694 A.2d 1045, 1056 (N.J. 1997).

As previously noted, Defendants' deficient submissions in support of their motion have contributed to a factual record that is insufficiently developed for this Court to determine that probable cause existed as a matter of law to arrest Plaintiff during the 2014 Incident. In support of their motion, Defendants cite two contemporaneous police reports written by Defendants O'Brien and Mulligan. These unsworn police reports do not establish the absence of a genuine dispute as to material facts for several reasons. The reports contain purely conclusory assertions, e.g. that the vehicular stop of Plaintiff was warranted "[b]ased upon the totality of the circumstances." Docket No. 73-2, Ex. C. Just as "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment," they likewise are insufficient to

affirmatively establish the basis for summary judgment. See Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 161 (3d Cir. 2009).

Many statements in the police reports are asserted without the establishment of a sufficient basis of knowledge or reliability underlying the assertion. For instance, the Defendants' presence at 143 Crescent Avenue appears predicated upon the Crime Stoppers tip and the confidential informant briefing, but Defendants provide no facts to establish the reliability, veracity, or basis of knowledge for these anonymous sources. Similarly, as an indicia supporting probable cause, the reports note that Defendant O'Brien "immediately recognized" Mr. Pennants and Plaintiff "from prior narcotic investigations and arrests," but Defendants do not explain the nature or result of such investigations. Where, as here, "the Declarant fails to provide a basis of knowledge for her statement, a particular statement may be unsuitable for consideration upon a motion for summary judgment." Bowen v. U.S. Dep't of Justice, 415 F. App'x. 340, 345 n.4 (3d Cir. 2011); see also Knutson v. Selective Ins. Co., 2017 WL 825198, at *2 (D.N.J. Mar. 1, 2017).

The deficiencies in Defendants' reliance on unsworn contemporaneous police reports are not cured by the post-arrest determination by Plainfield Municipal Court Judge Gross that probable causes existed to issue a criminal complaint against Plaintiff. See Docket No. 73-2, 7. Defendants did not arrest Plaintiff pursuant to a valid arrest warrant, in which case this Court would afford "substantial deference" to the neutral magistrate's probable cause determination. See State v. Dispoto, 383 N.J. Super. 205, 216 (N.J. App. Div. 2006) aff'd as modified, 189 N.J. 108 (N.J. 2007); Rasmussen v. United States, 2015 WL 9581874, at *4 (D.N.J. Dec. 30, 2015). If Plaintiff had been arrested pursuant to an arrest warrant, his § 1983 action for false arrest could only succeed by demonstrating that "(1) that the police officer 'knowingly and deliberately, or

with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Wilson v. Russo, 212 F.3d 781, 786–87 (3d Cir. 2000). Instead, Defendants made a warrantless arrest of Plaintiff and subsequently prepared a criminal complaint. In contrast to the "substantial deference" given to probable cause determinations for arrests pursuant to arrest warrants, "all warrantless searches or seizures are presumptively unreasonable . . . [and] when the police act without a warrant, the State bears the burden of proving by a preponderance of the evidence not only that the search or seizure was premised on probable cause, but also that it fell within one of the few well-delineated exceptions to the warrant requirement." State v. Johnson, 193 N.J. 528, 552 (N.J. 2008). The post-arrest determination by the Judge Gross that probable cause existed to issue a criminal complaint does not convert the warrantless arrest into an arrest made pursuant to a valid warrant, nor does it alleviate Defendants' burden in establishing the existence of probable cause.

The post-arrest probable cause determination is also not outcome-determinative because for warrantless arrests, probable cause is assessed in relation to the facts possessed by the arresting officer at the time of the warrantless arrest. Hunter v. Bryant, 502 U.S. 224, 228 (1991); see also State v. Pitcher, 379 N.J. Super. 308, 315–16 (N.J. App. Div. 2005) ("Information acquired subsequently cannot be used to either bolster or defeat the facts known at the time") (citing Hill v. California, 401 U.S. 797 (1971)). To determine whether probable cause existed as a matter of law, this Court must assess the facts as they existed to the Defendant officers on April 1, 2014, and not eight days later. And, in making such determination, the "standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the

magistrate's assessment." <u>Whiteley v. Warden, Wyo. State Penitentiary</u>, 401 U.S. 560, 566 (1971) (emphasis added).

Defendants' submissions and the underdeveloped factual record leave this Court unable to determine whether genuine disputes of material fact preclude summary judgment. As such, this Court denies without prejudice the 2014 Defendants' motion for summary judgment on Counts IV and VI.

    ii.  <u>Summary Judgment is Not Appropriate for the § 1983 Claims for Excessive Force (Count II) and Failure to Intervene (Count VIII)</u>

In the FAC, Plaintiff alleges that "Defendants used excessive force by inserting themselves in [Plaintiff's] anal cavity" during the April 2014 stationhouse search for illegal drugs hidden on Plaintiff's person, in violation of 42 U.S.C. § 1983 and the Eighth Amendment. FAC ¶ 3 (8). Plaintiff asserts that Defendants' failure to intervene to stop this unconstitutional behavior further violated Plaintiff's constitutional rights. FAC ¶ 4 (14). Defendants argue that reasonable suspicion existed that Plaintiff had concealed contraband in his underwear, and thus the search—and the force applied to effectuate such search—were constitutionally permissible. Docket No. 73, 17. For reasons that follow, this Court denies Defendants' motion for summary judgment on Count II and Count VIII.

A claim for excessive force while conducting a strip or body cavity search "may proceed under either the Fourth Amendment (unreasonable seizures of the person), or the Eighth Amendment (cruel and unusual punishments)." <u>Jordan v. Cicchi</u>, 428 F. App'x 195, 199–200 (3d Cir. 2011) (but noting that the Eighth Amendment is "the primary source of protection after an individual's conviction"); <u>Doe v. Groody</u>, 361 F.3d 232, 238 (3d Cir. 2004) (evaluating pretrial pat-down search pursuant to warrant under the Fourth Amendment). To recover under either Amendment, Plaintiff must establish that the search was conducted in an unreasonable manner.

<u>Robinson v. Ricci</u>, 2012 WL 1067909 (D.N.J. 2012) (the Eighth Amendment is "implicated where the strip search or visual body cavity search was conducted in a <u>brutish and unreasonable manner</u>")(emphasis added); <u>Bell v. Wolfish</u>, 441 U.S. 520, 560 (1979) (the Fourth Amendment rights of pretrial detainees are not violated where the body cavity search is "conducted in a reasonable manner").

The reasonableness of the search is determined by a "balancing of the need for the particular search against the invasion of personal rights that the search entails." <u>Bell</u>, 441 U.S. at 559. To apply this balancing test, this Court must "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." <u>Id</u>. Recent Supreme Court jurisprudence has emphasized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities," and that the "task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials." <u>Florence v. Board of Chosen Freeholders of the County of Burlington</u>, 132 S. Ct. 1510, 1517 (2012) (citation omitted). Physical rectal examinations are not per se unreasonable under the Eighth Amendment. <u>Hughes v. Kass</u>, 2017 WL 933243, at *3 (W.D. Pa. Feb. 2, 2017) ("While digital rectal examinations 'entail an intrusion greater than the severe if not gross interference with a person's privacy that occurs when guards conduct a visual inspection of body cavities,' they are not per se unreasonable." (quoting <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 42-44 (1st Cir. 2009)); <u>Green v. Hallam</u>, 105 Fed. Appx. 858, 862 (7th Cir. 2004) ("Because preventing drugs and weapons that can be smuggled through the alimentary canal or hidden in the rectal cavity is a legitimate penological concern, digital rectal searches are

a legitimate means of maintaining order and do not violate the Eighth Amendment as long as they are conducted in a reasonable manner." (quoting <u>Bell</u>, 441 U.S. at 559)).

The First Amended Complaint alleges the following facts concerning the 2014 search: 1) that Plaintiff refused consent and that the officers pulled down Plaintiff's pants; 2) that Defendant O'Brien made verbal threats "to break Markeye's neck if he moved"; 3) that Defendant O'Brien entered Plaintiff's anal cavity during the search; and 4) that the search caused "severe physical, psychological, and emotional harm." FAC ¶¶ 16-17. Because the factual record regarding the third and fourth aspects of the cavity search is insufficiently developed to determine the existence of any genuine dispute, this Court will deny Defendants' motion for summary judgment on Counts II and VIII of the FAC.

By itself, lack of consent does not render the subsequent cavity search unreasonable, since consent does not affect Defendants' reasonable interest in preventing contraband from entering the facilities. See <u>Bell</u>, 441 U.S. at 546 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of retained constitutional rights of both convicted prisoners and pretrial detainees."). The officers appear to have pulled down the pants after Plaintiff refused to comply with the officials' orders for Plaintiff to submit to the visual inspection and pull his own pants down. Hearing Tr. 89:3-13 (Mr. Boyd: "When I got to the station. There was just officers around me like this . . . tell[ing me] to pull down my pants. And I said, 'No, I'm not going to pull down my pants' . . . The Court: "You said to them, 'You pull down my pants?' Mr. Boyd: Yeah, I wasn't going to cooperate and pull down my own pants."). Plaintiff has not alleged or testified in the hearing that Defendants used violence or excessive force in how they removed the clothing from his person, and, by itself, the removal of clothing from detainees to perform a strip search does

not violate the Eighth Amendment. <u>Jordan v. Cicchi</u>, 2010 WL 848809, at *7 (D.N.J. Mar. 9, 2010), <u>rev'd in part on other grounds</u>, 428 F. App'x 195 (3d Cir. 2011) (officers' removal of Plaintiff's clothing did "not suggest any . . . excessive force" after Plaintiff "twice refused to comply with lawful orders to remove his clothes").

Defendant O'Brien's alleged threats likewise do not—by themselves—provide the basis of an Eighth Amendment claim, as verbal threats do not rise to the level of Eighth Amendment violations. <u>Gannaway v. Berks County Prison</u>, 439 F. App'x. 86, 91 (3d Cir. 2011). Similarly, the "psychological and emotional harm" that Plaintiff allegedly suffered does not establish an Eighth Amendment claim. <u>Millhouse v. Arbasak</u>, 373 F. App'x. 135, 137 (3d Cir. 2010) (body cavity strip "searches, even if embarrassing and humiliating, do not violate the constitution"); <u>Brown v. Blaine</u>, 185 Fed.Appx. 166, 170 (3d Cir. 2006) ("[w]hile we recognize that Brown may have suffered embarrassment and humiliation while the search was being conducted, we cannot conclude that Brown's constitutional rights were violated by the search procedures employed."); <u>Williamson v. Garman</u>, 2016 WL 3566967, at *5 (M.D. Pa. Jun. 29, 2016) ("Plaintiff's allegations that the search was degrading and embarrassing fails to state a constitutional violation").

Regarding Defendant O'Brien's alleged penetration of Plaintiff's anal cavity during the search and the "severe physical" harm this caused, this Court finds the factual record to be insufficiently developed to determine whether genuine disputes exist. In support of their motion, Defendants provide no affidavits or sworn declarations concerning the nature, scope, duration, or force employed during the cavity search. Rather, Defendants' 56.1 statement merely states that "During the booking process of Plaintiff, Detective Mulligan located a plastic bag of suspected marijuana from Plaintiff's person." Docket No. 73-2, 7.

In their moving papers, Defendants argue that the cavity search passes constitutional muster because it was performed "(1) to protect the safety of the facility and individuals located therein and (2) [because] reasonable suspicion existed that Plaintiff concealed contraband." Docket No. 73-2, 17. While militating in favor of conducting a body cavity search, these arguments do not demonstrate as a matter of law that the <u>actual body cavity search</u> to which Defendants subjected Plaintiff was <u>conducted</u> in a reasonable manner. See <u>Bell</u>, 441 U.S. 520, 560 (1979) (body cavity search is unconstitutionally unless it is "conducted in a reasonable manner"). Without undisputed facts regarding the reasonableness of the process, duration, and scope of the cavity search, this Court cannot determine as a matter of law that Defendants did not violate Plaintiff's constitutional rights during the search. Accordingly, this Court denies summary judgment for Defendants on Counts II and VIII.

### iii. <u>Summary Judgment is Not Appropriate for Count XIII, for Violations of the New Jersey Civil Rights Act</u>

In the FAC, Plaintiff asserts one cause of action for violations of the NJCRA, N.J. Stat. Ann 10:6-2, for Defendants' "unreasonable and excessive force" during the 2014 anal cavity search. FAC 18, ¶ 3. Since the NJCRA "was modeled after § 1983 . . . courts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983." <u>Samoles v. Lacey Twp.</u>, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (quoting <u>Trafton v. City of Woodbury</u>, 799 F.Supp.2d 417, 443–44 (D.N.J. 2011)); <u>Chapman v. New Jersey</u>, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart ...."); <u>see also</u> <u>Hedges v. Musco</u>, 204 F.3d 109, 121 n. 12 (3d Cir. 2000) (concluding New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment). Because this Court finds the factual record to be insufficiently develop to grant Defendants summary judgment on Count II (excessive force),

this Court likewise cannot grant summary judgment for Count XIII, its analogue claim under the NJCRA.

### c. Qualified Immunity

In deciding whether Defendants are entitled to qualified immunity, this Court must examine "(1) whether the facts alleged make out a violation of a constitutional right; and (2) if so, whether the right at issue was clearly established at the time of the defendant's alleged misconduct." See Pearson v. Callahan, 555 U.S. 223 (2009); see also Kelly v. Borough of Carlisle, 544 Fed. App'x. 129, 133-34 (3d Cir. 2013). Qualified immunity "accommodate[es] competing values" by permitting a plaintiff to recover for constitutional violations where the defendant officer was "plainly incompetent or ... knowingly violate[d] the law," while immunizing an officer who "made a reasonable mistake about the legal constraints on his actions." Curley v. Klem, 499 F.3d 199, 206–07 (3d Cir. 2007). In determining whether there has been a constitutional violation, courts should view the facts "in the light most favorable to the plaintiff." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). Defendants bear the burden of establishing the applicability of qualified immunity. Thomas v. Independence Twp., 463 F.3d 285, 292 (3d Cir. 2006).

With respect to false arrest and false imprisonment, the qualified immunity "analysis turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain and initiate the criminal prosecution." Ianuale v. Keyport Twp., 2016 WL 5955527, at *7 (D.N.J. Oct. 13, 2016). For claims of excessive force, the qualified immunity analysis is distinct from the merits of the excessive force claim (Bennett, 274 F.3d at 137), and turns on the "objective reasonableness" of the force used. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). Some objective circumstances "potentially relevant to a determination of

excessive force" include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. at 2473.

With respect to all four § 1983 claims against the 2014 Defendants, the factual record is insufficiently developed for this Court to determine whether qualified immunity is warranted. For the false arrest and false imprisonment claims, Defendants' deficient submissions in support of their motion render this Court unable to determine whether the officers "reasonably but mistakenly" concluded that probable cause existed to arrest Plaintiff. Since the qualified immunity analysis for Plaintiff's excessive force claim turns on objective factors—such as the use and degree of rectal penetration, as well as Plaintiff's resulting injury—to which Defendants have failed to demonstrate the absence of genuine dispute, this Court likewise cannot determine whether qualified immunity bars Defendants from liability on Counts II and VIII.

V.      CONCLUSION

Accordingly, for the foregoing reasons; and for good cause shown;

**IT IS** on this 28th day of March, 2018;

**ORDERED** that the 2014 Defendants' motion for summary judgment (Docket No. 73) is **DENIED WITHOUT PREJUDICE**; and further

**ORDERED** that the 2012 Defendants' motion for summary judgment (Docket No. 76), to dismiss Count XII of the FAC, is **GRANTED.**

      /s Stanley R. Chesler
      STANLEY R. CHESLER
      United States District Judge